# COURT OF APPEALS OF VIRGINIA

## Record No. 0647-25-2

QUENTIN ELIOT SCOTT, JR.

v.

COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey

Argued at Richmond, Virginia

Opinion Issued July 7, 2026

### FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

(Dannie R. Sutton, Jr.; McDonald, Sutton & DuVal, PLC, on brief), for appellant. Appellant submitting on brief.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

### PUBLISHED OPINION BY
### CHIEF JUDGE MARLA GRAFF DECKER

Quentin Eliot Scott, Jr., appeals his convictions for breaking and entering as a principal in the second degree and conspiracy to break and enter in violation of Code §§ 18.2-22 and -91. Scott argues that the trial court erred by denying his challenge to the prosecution's use of its peremptory strikes, overruling his hearsay objection to a co-conspirator's statement, and concluding the evidence was sufficient to support his convictions. We hold the trial court did not err and affirm the judgment.

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

During the early morning hours on January 27, 2023, Quentin Scott, Patrick Banker, and Jose Rivas agreed to break into The Ville restaurant in Mechanicsville after Scott suggested there would be money inside. The three men traveled from Tappahannock to Mechanicsville in Banker's truck. When they arrived at The Ville, Banker and Scott approached the restaurant while Rivas remained in the car and acted as lookout. But they abandoned the burglary plan because there were cars in the parking lot and they saw a man in the area with a flashlight.

That same morning, after aborting the attempt to burglarize The Ville, the three men decided to burglarize the Applebee's restaurant in Mechanicsville. Both Scott and Rivas worked there, and Banker had previously burglarized the restaurant. The men knew the safe was often open because the lock did not always function properly. Scott drove to a location close to the restaurant, dropped off Banker and Rivas, and waited nearby in the truck. While Rivas stood outside Applebee's, Banker threw a rock through the front window and entered the restaurant. He was unable to open the safe and quickly left the building. Banker called Scott to pick them up, and the three men returned to Tappahannock.

Hanover County Sheriff's Office Investigator Danny Pittman investigated the January 27, 2023 break-in at Applebee's, as well as an earlier break-in that occurred at the restaurant on January 21, 2023. After viewing surveillance video from the incidents, Pittman concluded—based on clothing, height, weight, and gait—that "possibly the same suspect" committed both crimes.

---

[2] Under the applicable standard of review, this Court considers "the evidence in the light most favorable to the Commonwealth," as the prevailing party below. *Lotz v. Commonwealth*, 277 Va. 345, 349 (2009). In doing so, we "accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." *Shivaee v. Commonwealth*, 270 Va. 112, 127 (2005).

Banker was arrested in March 2023. After his arrest, he asked his girlfriend, Salonte Reed,[3] who was Scott's cousin, to tell Scott to "get rid of his phone" because he feared the police would find incriminating evidence on it.

Banker subsequently confessed to breaking into Applebee's on January 21 and 27, 2023, and committing other burglaries in nearby jurisdictions. He identified Rivas as his accomplice in all of the offenses except the January 21 burglary. Banker also told the police that Scott participated in only the January 27 burglary at Applebee's and his role was "just driving." Banker was the Commonwealth's primary fact witness at trial and testified in keeping with his statements to police.

Police obtained phones from Banker, Rivas, and Scott and analyzed their phone records pursuant to search warrants. The data from Banker's phone showed that he and Scott exchanged a series of text messages on January 26 and 27, 2023. The data also revealed that the phone the police took from Scott when he was arrested in May 2023 was not the same phone he used at the time of the burglary.

Digital forensic analyst Tyler Cary examined the phone records and testified as an expert. He said the phone data established that the phones belonging to Scott, Banker, and Rivas were in contact with two cell towers that were close to The Ville and Applebee's on the night at issue. After Scott finished his shift at Applebee's, his phone traveled from the restaurant toward his apartment near Tappahannock. Banker's phone traveled from his residence in Tappahannock to the area of Scott's apartment and then to Mechanicsville near the restaurants. The phone records also showed that Banker remained in contact with Scott while he broke into Applebee's, temporarily lost contact, and reconnected after he left the restaurant. The phone data established

---

[3] At the time of the trial in October 2024, Reed and Banker were married.

that Banker's and Rivas's phones then returned to the vicinity of Scott's apartment and to Tappahannock.

Testifying for the defense at Scott's trial, Rivas said he had known Scott "for a while." He admitted breaking into Applebee's with Banker but claimed Scott had not been involved in that crime. He acknowledged that he sent a text message to a third party saying that he and Banker were going to pick up Scott, but he testified they did not do so and Scott did not go with them to Mechanicsville.

Scott moved to strike the evidence on the ground that Banker, a multi-convicted felon, was not a credible witness. He contended the evidence did not establish that he conspired with Banker or Rivas or participated in the burglary. The trial court denied the motion. Scott renewed his motion after presenting his own evidence, which the court again denied. The jury returned guilty verdicts for burglary as a principal in the second degree and conspiracy, and the court sentenced Scott to a total of ten years with seven years and six months suspended.

ANALYSIS

Scott contests three of the trial court's rulings: denying his challenge to the prosecution's peremptory strikes, overruling his hearsay objection to a co-conspirator's statement, and holding the evidence was sufficient to support his convictions. The Court addresses each issue in turn.

I. Challenge to the Prosecution's Peremptory Strikes

Scott contends that "[d]uring jury selection approximately 50 percent of the [Black] jurors were struck from the panel" and that the defense "took particular issue with [the strike of]

Juror Number 2."[4]  He argues that "the Commonwealth did not provide a sufficient, neutral explanation for excluding" her.[5]  The record belies his claims.

The seminal case of *Batson v. Kentucky*, 476 U.S. 79 (1986), "reaffirmed the long established principle" that purposefully denying a person's participation as a juror on the basis of race violates the Equal Protection Clause.  *Barksdale v. Commonwealth*, 17 Va. App. 456, 458 (1993) (en banc) (citing *Batson*, 476 U.S. at 84); *see Lightfoot v. Commonwealth*, 50 Va. App. 723, 727 (2007) (en banc).  And it is clear that a criminal defendant has a constitutional right "to be tried by a jury whose members are selected pursuant to non-discriminatory criteria." *Williams v. Commonwealth*, 82 Va. App. 639, 649 (2024) (quoting *Batson*, 476 U.S. at 85-86).

---

[4] Scott's challenge to the strike of Juror 2, coupled with the prosecutor's race-neutral response, qualifies as an unopposed proffer that Juror 2 was Black.  *See generally Bennett v. Commonwealth*, 84 Va. App. 607, 618 n.7 (2025) (recognizing defense counsel's unopposed proffer as establishing the period of time for which the jury deliberated between two events).  But because nothing in the record identifies the race of the other stricken jurors, the accuracy of Scott's assertion that half of the jurors struck from the panel were Black is not supported by the record.  *See Lightfoot v. Commonwealth*, 50 Va. App. 723, 731-32 (2007) (en banc) (holding that the record was insufficient to determine whether the trial court erred in striking a Black juror because the juror was not identified in the record); *see also Commonwealth v. Brawner*, 304 Va. 563, 567 n.1 (2025) ("[W]e are limited to the appellate record . . . in consideration of issues presented here." (first alteration in original) (quoting *Woodfin v. Commonwealth*, 236 Va. 89, 98 (1988))).

Additionally, Scott offers no legal argument on brief challenging the Commonwealth's rationale for striking any of the other jurors.  Rule 5A:20(e) requires an opening brief to contain argument and supporting authority for each assignment of error.  Appellate courts simply do not consider claims of error that are "[u]nsupported." *Church Mut. Ins. v. Ephesus Richmond Seventh-Day Adventist Church*, 84 Va. App. 371, 380 (2025) (alteration in original) (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017)).  And the Court may treat an issue as waived when the party fails to develop it. *Harless v. Nicely*, 80 Va. App. 678, 691 (2024).  Accordingly, the Court limits its analysis to the peremptory strike of Juror 2.

[5] Scott also argues for the first time on appeal that Juror 2 was rehabilitated "and, therefore, it was improper to strike her for cause."  This claim lacks any factual basis.  The trial court initially said Juror 2 was "struck for cause" but immediately corrected the statement to reflect that the juror was removed by a peremptory strike, as corroborated by the record. *See Duva v. Duva*, 55 Va. App. 286, 299 (2009) (declining to address issues that a party raised below but on which he did not obtain rulings).

*Batson* set out "a sequential, three-step process" for determining whether a juror has been "purposeful[ly] discriminat[ed against]." *Id.*; *see Pitchford v. Cain*, 225 L. Ed. 2d 11, 15 (2026) (outlining the three-step process). In the context of race, the party opposing the strike must first make a prima-facie showing of racial discrimination; second, the other party must then offer a facially race-neutral explanation for the strike; and finally, the trial court must decide whether the stated reason persuasively refutes the claim of purposeful racial discrimination. *See Bethea v. Commonwealth*, 297 Va. 730, 748-49 (2019).

We begin our analysis in this case by noting that the first step in the process (requiring a prima-facie showing of racial discrimination) is moot because the trial court ruled on "the ultimate question of intentional discrimination." *Hernandez v. New York*, 500 U.S. 352, 359 (1991); *see Barksdale*, 17 Va. App. at 459. The issues before this Court, therefore, are whether the prosecutor responded with facially race-neutral reasons, step two in the process, and whether the trial court erred in ruling the prosecutor's reasons for striking Juror 2 were not discriminatory in fact, step three in the analysis.[6] *See Buck v. Commonwealth*, 247 Va. 449, 451 (1994). We examine these two steps in turn.

The record in this case shows that during voir dire, Jurors 5 and 15 indicated that they could not stay after 5:00 p.m. that day because of childcare commitments. Similarly, Juror 2 (the challenged juror), as well as Jurors 14 and 19, said they could not return the next day because

---

[6] The Court assumes without deciding that Scott challenges both steps two and three of the *Batson* analysis and that he preserved his arguments on these steps at trial. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (assuming without deciding that an issue was properly before the Court because addressing it on the merits provided the best and narrowest ground for resolution). *See generally Pitchford*, 225 L. Ed. 2d at 18 (explaining that a party making a *Batson* claim must follow the general requirement of objecting in the trial court to preserve the claim for appeal and ruling that Pitchford did not waive his objection because he contested the prosecutor's proffered race-neutral reasons at step two but was prevented from attempting to rebut those reasons at step three by the trial court, which "explicitly assured [defense] counsel" when he tried to raise the issue "that [his] *Batson* objection was preserved").

they were needed at work.  Later, when the prosecutor asked if the jurors knew close friends or family who had been charged with a crime, Juror 2 said that she knew someone whom she believed the police treated unfairly.  She added that it would be difficult for her to decide whether to believe the testimony of police officers because she "would have bias" but she could "give them a chance."  Juror 19 said that sometimes the police were fair and other times they were not fair, but he could listen to an officer's testimony before deciding whether to believe the officer.

After voir dire, certain prospective jurors were struck for cause, and others were removed using peremptory strikes.  The court granted the Commonwealth's motion to strike Juror 8 for cause because she had not acknowledged she had a criminal charge.  The court also struck Juror 15 for cause because he needed to leave by 4:30 p.m. on the first day of trial to pick up his children.  Scott did not object to either of those strikes.  The Commonwealth agreed to use a peremptory strike to remove Juror 5 because he needed to leave by 5:00 p.m. that day.[7]  The Commonwealth also peremptorily struck Jurors 2, 14, and 19.

After the peremptory strikes were made, Scott's counsel raised a *Batson* challenge regarding Juror 2 "at the behest of [his] client," arguing the Commonwealth struck half of the jurors who were Black.  The Commonwealth explained that all four of its peremptory strikes— those of Jurors 2, 5, 14, and 19—were based on scheduling conflicts that the jurors had announced during voir dire.  The prosecutor added that Juror 2 had expressed a possible bias against police officers.  Scott agreed that Juror 2 answered the questions about fairness

---

[7] Striking Juror 5 for cause, as was done with regard to Juror 15, would have resulted in a mistrial because only twenty potential jurors were available after Jurors 8 and 15 were struck for cause.

"differently than any of [the rest of] the venire."[8] The trial court expressly "accept[ed]" the Commonwealth's "reasons" for striking Juror 2, finding that they were race-neutral in fact, and denied the *Batson* motion. Scott did not make any further argument regarding the prosecutor's strike of Juror 2.

Analyzing step two of the process requires this Court to "determine whether, assuming the proffered reasons for the peremptory challenges are true, [they] violate the Equal Protection Clause as a matter of law." *Williams*, 82 Va. App. at 649 (alteration in original) (emphasis omitted) (quoting *Barksdale*, 17 Va. App. at 459). In other words, the appellate court asks whether the reasons are race-neutral on their face. *See id.* This step is reviewed de novo. *Id.* at 650. Here, the prosecutor stated that she peremptorily struck all four jurors, including Juror 2, because they had commitments that prevented them from either staying past 5:00 p.m. that day or returning to court the next day. Releasing the jurors because they could not be present for the entire trial is a facially race-neutral reason. Scott did not object when the court struck Juror 15 for cause because he had to leave at 4:30 p.m. that day to pick up his children. Juror 2 and the other three jurors were peremptorily struck for virtually identical reasons as Juror 15. *See Lightfoot*, 50 Va. App. at 730. The prosecutor further explained that Jurors 2 and 19 indicated possible bias against police officers, based on their beliefs that law enforcement sometimes treated people unfairly. Possible bias against the police is also a facially race-neutral reason for striking a juror. *See Goodwin v. Commonwealth*, 71 Va. App. 125, 141 (2019) (stating that a prospective juror who is aware of "any bias or prejudice" is "not competent" to serve because she "does not stand indifferent to the cause" (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 60-61 (2011))). Accordingly, the prosecutor's reasons for striking Juror 2—

---

[8] Jurors 1, 7, 9, and 25 knew individuals charged with a crime and said that the police had treated those people fairly. Juror 19 indicated that whether the police were fair depended on the circumstances.

restricted availability and possible bias against law enforcement—were facially race-neutral and satisfied step two of the *Batson* test.

We turn next to the final piece of the analysis. Step three of the process, which requires a trial court to determine whether a prosecutor's explanation for a peremptory strike provided a race-neutral reason or showed purposeful discrimination, is a factual determination "entitled to 'great deference.'" *Bethea*, 297 Va. at 756 (quoting *Davis v. Ayala*, 576 U.S. 257, 271 (2015)). "[T]he appellate court will reverse only if the decision was 'clearly erroneous' or 'plainly wrong.'" *Williams*, 82 Va. App. at 650 (quoting *Stevens v. Commonwealth*, 70 Va. App. 280, 302 (2019)).

It is evident here that the record of the entire voir dire process supports the trial court's finding that the prosecutor's strike of Juror 2 was not purposeful racial discrimination, as suggested by Scott. *See Bigsby v. Commonwealth*, 86 Va. App. 403, 425 (2025) (holding that "unless the record reflects clear and undisputed evidence to the contrary, a trial court's factual finding that a peremptory challenge was exercised for a neutral or non-discriminatory reason is binding on this Court on appeal"). In *Bigsby*, the prosecutor peremptorily struck jurors for multiple reasons—including the "potential inability to focus on the trial rather than extraneous concerns[] and the likelihood of bias due to a friend's conviction for one of the crimes with which [the defendant] was charged." *Id.* The record contained no evidence that the prosecutor's stated reasons were pretextual. *See id.* This Court affirmed the denial of Bigsby's *Batson* motion. *See id.* at 426. Here, in Scott's case, the prosecutor's explanations for striking Juror 2— restricted availability and possible bias against law enforcement—are benign like those given in *Bigsby*. And as in *Bigsby*, the explanations were supported by the record, and nothing indicates that the stated reasons were pretextual. As a result, the trial court did not err in denying Scott's *Batson* challenge to the peremptory strike of Juror 2. *See id.*

- 9 -

## II. Hearsay Objection to Co-Conspirator's Statement

Virginia Rule of Evidence 2:803(0)(E) creates an exception to the rule against hearsay for a statement made by a party's co-conspirator "during the course and in furtherance of the conspiracy." Scott contends that the trial court erred in allowing Banker's testimony that he told his girlfriend, Salonte Reed, to instruct Scott to "get rid of his phone" because no credible evidence established that he and Banker were co-conspirators. His claim is waived under Rule 5A:18, however, because he did not make the same argument at trial.

"Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Commonwealth v. Carolino*, 303 Va. 399, 409 (2024) (quoting *Bethea*, 297 Va. at 743). To comply with Rule 5A:18, a party must state his objection "with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." So an alleged error will not be addressed on appeal unless "a specific argument" about that precise error was "made to the trial court at the appropriate time." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc), *aff'd by unpub'd order*, No. 040019 (Va. Oct. 15, 2004); *see Commonwealth v. Bass*, 292 Va. 19, 26 (2016). "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (second alteration in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)); *see Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022).

Scott argued at trial that any statements from Banker to Reed were not admissible under the co-conspirator hearsay exception because *Reed* herself was not alleged to be a part of the conspiracy. Now, Scott argues on appeal that the challenged statements were inadmissible under the exception because the evidence did not prove that he and *Banker* were co-conspirators. Because this specific argument as to Banker was not presented to the trial court, it is barred by

Rule 5A:18, and this Court will not consider it.[9]  *See Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023).

### III. and IV.  Sufficiency of the Evidence

Scott was convicted of conspiracy to break and enter Applebee's on January 27, 2023, and breaking and entering as a principal in the second degree.  He contends the evidence was insufficient to convict him because Banker was not a credible witness and, without his testimony, the Commonwealth could not prove that Scott himself knew the intended actions of the alleged co-conspirators and principals.

The standard of review for sufficiency challenges is well established.  "When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one."  *Commonwealth v. Mahoney*, ___ Va. ___, ___ (June 11, 2026) (quoting *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024)).  "[T]he judgment of the trial court is presumed correct and will not be disturbed unless it is [']plainly wrong or without evidence to support it.[']"  *Commonwealth v. Wilkerson*, 304 Va. 92, 100 (2025) (first alteration in original) (quoting *Garrick*, 303 Va. at 182); *see Cuffee v. Commonwealth*, ___ Va. ___, ___ (Apr. 16, 2026).  And determinations regarding the credibility of the witnesses and the weight to be given their testimony are findings of fact entitled to deference on appeal under the plainly wrong standard.  *Washington v. Commonwealth*, 75 Va. App. 606, 615-16 (2022).  Finally, appellate review "does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'"  *Garrick*, 303 Va. at 183 (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)); *see Mahoney*, ___ Va. at ___.

---

[9] Scott has not asked this Court to invoke either of the exceptions to Rule 5A:18 in his opening brief, and the Court will not invoke them sua sponte.  *See, e.g.*, *Fleming v. Commonwealth*, 85 Va. App. 27, 54 (2025).

The question on appeal is "whether *any* rational trier of fact could have found the [challenged] elements of the crime beyond a reasonable doubt." *Cappe v. Commonwealth*, 304 Va. 86, 87 (2025) (per curiam) (emphasis added) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)); *see Commonwealth v. Barney*, 302 Va. 84, 97 (2023). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)); *see Commonwealth v. Richerson*, ___ Va. ___, ___ (Apr. 23, 2026); *see also Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022) (observing that this same standard applies to video evidence).

The premise of Scott's sufficiency argument is that Banker's testimony that he, Rivas, and Scott agreed to burglarize the Mechanicsville Applebee's and then did so, with Scott serving as the getaway driver, was not credible and should have been rejected in favor of Rivas's testimony that Scott was not involved. As a result, he posits that the evidence did not prove that Banker and Scott were co-conspirators. Plainly and simply, his claim fails because the jury was not required to believe Rivas's testimony. It is well-established that determining the credibility of witnesses is a matter for the trier of fact and the appellate court must "give[] deference" to such decisions on review. *Sample v. Commonwealth*, 303 Va. 2, 16 (2024). "Credibility determinations . . . 'will not be disturbed on appeal unless plainly wrong.'" *Bennett v. Commonwealth*, 84 Va. App. 607, 620 (2025) (quoting *Maust v. Commonwealth*, 77 Va. App. 687, 703 (2023) (en banc)). Banker's status as a convicted felon was known to the jury while it determined who and what to believe. The fact that he was a felon and expected to gain some benefit in sentencing by testifying for the Commonwealth did not make his testimony inherently incredible as a matter of law. *See Ray*, 74 Va. App. at 306. To be "*inherently* incredible,"

- 12 -

testimony must be "*so* contrary to the human experience as to render it unworthy of belief." *Grimaldo v. Commonwealth*, 82 Va. App. 304, 321 (2024) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)).  Such was not the case here.

Banker's testimony, corroborated by the cell-phone-record evidence, established that he, Scott, and Rivas conspired to burglarize Applebee's on January 27, 2023.  "Conspiracy is . . . an agreement between two or more persons by some concerted action to commit an offense." *Velez-Suarez v. Commonwealth*, 64 Va. App. 269, 277 (2015) (quoting *Feigley v. Commonwealth*, 16 Va. App. 717, 722 (1993)).  The evidence establishes a conspiracy when it shows that the conspirators, by their actions, "pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment." *Carr v. Commonwealth*, 69 Va. App. 106, 118 (2018) (quoting *Brown v. Commonwealth*, 10 Va. App. 73, 78 (1990)).  Scott's role in the crime was to wait nearby while Banker and Rivas broke into the restaurant and to pick them up later, clearly serving as the getaway driver.  The cell-phone-record evidence corroborated Banker's testimony that he and Scott maintained phone contact during the breaking and entering.  Accordingly, the evidence established that Scott was engaged in a conspiracy with Banker and Rivas.

Further, contrary to Scott's suggestion, the evidence proved that he acted as a principal in the second degree to the burglary.  A defendant is guilty as a principal in the second degree if the evidence establishes that he "procured, encouraged, countenanced, or approved the criminal act." *McMorris v. Commonwealth*, 276 Va. 500, 505 (2008).  The offender must have "consented to the felonious purpose and . . . contributed to its execution." *Id.*  "[A] defendant is guilty as a principal in the second degree if he [commits] some overt act done knowingly in furtherance of the commission of the crime[] or . . . shared in the criminal intent of the principal committing the crime." *Id.*  Further, "in the eyes of the law," a person is present at the committed offense if he

- 13 -

"set out" with others "upon one common design . . . and each t[ook] the part assigned [to] him." *Washington v. Commonwealth*, 43 Va. App. 291, 306-07 (2004) (quoting *Sutton v. Commonwealth*, 228 Va. 654, 667 (1985)).

In addition to Banker's testimony, the evidence gathered from the cell-phone records showed that Scott and Banker exchanged messages on January 26 and 27, 2023, and were in the vicinity of Applebee's at the time of the burglary on January 27, 2023. At Scott's suggestion, the three men initially intended to burglarize another restaurant in the area, but they abandoned the plan because of activity in the parking lot. They then went to the Applebee's where Scott and Rivas both worked, believing the safe might be unlocked. Scott, the designated getaway driver, waited nearby in Banker's truck while Banker broke into Applebee's and Rivas stood watch outside the building. Banker maintained cell-phone contact with Scott while breaking into the restaurant. The evidence proved Scott knew of his co-conspirators' actions and participated in carrying out the offense. As a result, the evidence sufficiently proved Scott's guilt as a principal in the second degree.

CONCLUSION

The trial court did not err in denying Scott's *Batson* motion. And Scott's hearsay claim is waived by Rule 5A:18. Finally, the evidence is sufficient to sustain the convictions for breaking and entering as a principal in the second degree and conspiracy to break and enter. Accordingly, the trial court's judgment is affirmed.

*Affirmed.*

- 14 -